UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
D. PENGUIN BROTHERS LTD.; H.T.A. :
EQUITIES, INC.; CFH ASSOCIATES, :
INC.; AMBASSADOR INVESTORS :
GROUP, INC.; RED, WHITE & BLUE : 13 Civ. 0041 (TPG)
PROPERTIES, INC.; 64 GREEN STREET :
LLC; BDLAK EQUITIES, INC.; SHPITZ :
EQUITIES INC.; 200 HOMES INC.; PETE :
JACOV; AND AVRAHAM GLATTMAN, :
                                  :
                      Plaintiffs, :
                                  :
        – against –               :
                                  :
CITY NATIONAL BANK, NBUF          :
DEVELOPMENT LTD.; BLACK UNITED    :
FUND OF NEW YORK, INC.; FIRST PRO :
GROUP, INC.; INNER CITY STRATEGIES, :
JAMES ROBERT WILLIAMS a/k/a J.    :
ROBERT WILLIAMS a/k/a BOB         :
WILLIAMS; DAVID SPIEGELMAN, ESQ.; :
and THE CITY OF NEW YORK.         :
                                  :
                      Defendants. :
                                  :
------------------------------------------------x
                                  :
MAZAL 57, LLC; BEACH 96th STREET  :
LLC; and FIVE FIVE'S PROPERTIES,  :
INC.,                             :
                                  :
                      Plaintiffs, : 13 Civ. 0706 (TPG)
                                  :
        – against –               :
                                  :
CITY NATIONAL BANK, et al.,       :
                                  :
                      Defendants. :
                                  : **OPINION**
------------------------------------------------x

This action arises in connection with fraudulent real estate ventures related to various properties in New York City. Plaintiffs filed two related complaints in two separate but related actions, alleging violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, and New York state law. In brief, plaintiffs allege that defendants defrauded them out of approximately six million dollars by inducing them to invest in fictitious real estate projects. In connection with these ventures, plaintiffs deposited funds into an attorney escrow account, which plaintiffs' attorney allegedly stole.

Plaintiffs' federal RICO claims are the sole basis for federal jurisdiction. Diversity of citizenship is not present.

Before the court are two motions to dismiss the complaints. Defendants move to dismiss the RICO charges pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendants also move to dismiss the state law claims on statute of limitations grounds.

For the foregoing reasons, all of plaintiffs' claims are dismissed. The RICO claims are dismissed for failing to state a claim upon which relief can be granted and for failing to plead with sufficient particularity. The court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## The Complaints

This opinion accepts these facts from the complaints and assumes their truth for purposes of deciding these motions to dismiss.

There are multiple plaintiffs and defendants involved in these consolidated cases. Plaintiffs D. Penguin Brothers Limited ("Penguin"); H.T.A. Equities, Inc.; CFH Associates, Inc.; Ambassador Investors Group Inc.; Red White & Blue Properties Inc.; 64 Green Street LLC; Bdlak Equities, Inc.; Shpitz Equities Inc.; and 2000 Homes Inc. are corporations that purchase, develop, manage, and sell property in low- and middle-income communities in New York ("plaintiff corporations"). Plaintiffs Pete Jacov and Avraham Glattman are persons who are each 50% shareholders and officers of the plaintiff corporations. Plaintiffs Mazal 57, LLC and Beach 96th Street LLC are limited liability companies that purchase, develop, manage, and sell property in low- and middle-income communities in New York and plaintiff Five Five's Properties, Inc. is a dissolved corporation that performed the same services.

Defendants are David Spiegelman, an attorney licensed in the state of New York; James Robert Williams, Chairman of the National Black United Fund ("NBUF"); the Black United Fund of New York ("BUFNY"); NBUF Development, a subsidiary of NBUF; Inner City Strategies ("ICS"); First Pro Group, Inc. ("First Pro"); the City National Bank of New Jersey ("City National Bank"); and the City of New York (the "City"). This memorandum will refer to

3

NBUF, BUFNY, NBUF Development, ICS, First Pro Group, and City National Bank collectively as the "institutional defendants."

According to plaintiffs' complaints, in late 2004 or early 2005, Spiegelman, plaintiffs' attorney, and Williams proposed that plaintiffs purchase financially troubled Section 8 housing projects, which include rent-subsidized housing operated in accordance with Section 8 of the United States Housing Act of 1983, (the "Section 8 deals") and invest in other real estate ventures (the "development deals"). Spiegelman and Williams allegedly made several representations to induce plaintiffs to deposit $4.5 million dollars into escrow accounts (the "escrowed funds") maintained by Spiegelman. Significantly, Williams told plaintiffs that he could exert influence over the Department of Housing and Urban Development, the New York City Housing Authority, and other City agencies to facilitate the approvals required for the Section 8 deals and development deals. Williams also told plaintiffs that the City agencies required plaintiffs to demonstrate financial capacity by depositing the escrowed funds into Spiegelman's attorney trust accounts at City National Bank. In turn, Spiegelman assured plaintiffs that he would not withdraw the escrowed funds without approval from Jacov or Glattman.

Williams identified the first Section 8 deal in April 2005, and later provided plaintiffs the opportunity to invest in several other projects. In order to facilitate additional real estate ventures, Jacov and Glattman entered into a general partnership agreement with Williams, which Spiegelman notarized, on

November 1, 2007. As part of the general partnership agreement, Jacov and Glattman agreed to purchase 29 Section-8 buildings in the spring of 2008.

However, plaintiffs allege that the proposed real estate transactions were mere fictions. According to the complaints, between early 2005 and early 2011, Spiegelman stole the escrowed funds through interbank wire transfers. He transferred the escrowed funds held in his attorney trust account at City National Bank and in his attorney trust account at HSBC Bank to various bank accounts, including an account for defendant ICS and Penguin's account at City National Bank (the "Penguin account").

Plaintiffs allege that all of the defendants conspired together to "perpetrate thefts and related crimes" and to use the proceeds from those thefts to purchase the favor and influence of government officials on behalf of NBUF. Specifically, plaintiffs allege that the defendants planned to use the money to contribute to political campaigns and political action committees in order to advance NBUF's goals and status.

Plaintiffs also allege that Williams and Spiegelman stole an additional $2.2 million in "other funds entrusted to Spiegelman in escrow for purposes unrelated to the Section 8 deals or the development deals." Penguin Compl. ¶ 62. However, the complaints do not describe in any detail the circumstances through which defendants stole these funds.

On January 2, 2013, plaintiffs filed suit against defendants for conversion, fraud, RICO, and aiding and abetting a breach of fiduciary duty.

5

Defendants contend that the alleged RICO claims should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). They also contend that plaintiffs fail to plead the RICO claim with particularity, as required by Rule 9(b).

Plaintiffs' complaints fail to satisfy the requirements of Rules 12(b)(6) and 9(b), and thus their claims are dismissed.

## Discussion

**1. Motion to dismiss standard**

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To establish a facially plausible case, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss, the court must accept all well-pleaded allegations contained in the complaint to be true and must draw all reasonable inferences in favor of the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Given that plaintiffs bring these actions based on federal question jurisdiction, this memorandum will first examine plaintiffs' federal claims.

6

## 2. RICO Claims

In 1970, Congress enacted the RICO Act as part of the Organized Crime Control Act in order to "seek the eradication of organized crime in the United States." Am. Fed. of State, Cnty. and Mun. Emps. Dist. Council 37 v. Bristol–Myers Squibb Co., No. 12 Civ. 2238 (JPO), 2013 WL 2391999, at *3 (S.D.N.Y. Jun. 3, 2013) (quoting Pub.L. No. 91–452 (1970)). Pursuant to the statute, it is "unlawful for any person employed or associated with any enterprise...to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c); see also Rothstein v. GMAC Mortgage, LLC, 12 Civ. 3412 (AJN), 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013).

To state a plausible claim for a violation of RICO § 1962(c), the complaint:

> must demonstrate, as to each defendant, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise.

Rothstein, 2013 WL 5437648. Significantly, these "requirements...must be established as to each individual defendant." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).

Additionally, all elements of a RICO claim must satisfy the heightened pleading requirement set forth in Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." See O & G Carriers, Inc. v. Smith, No. 89 Civ. 3131 (TPG), 799 F. Supp. 1528, 1541

7

(S.D.N.Y. 1992). The Second Circuit has interpreted Rule 9(b) to require that a complaint: "(1) specify the statements, oral or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (2) identify the speaker or the writer; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." S.E.C. v. Lee, 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010).

Although "Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Wood ex rel. U.S. v. Applied Research Associates, Inc., 328 F. App'x 744, 747 (2d Cir. 2009). In other words, "[a]n ample factual basis must be supplied to support the charges." Id. And when claims are alleged against multiple defendants, "guilt by association is impermissible." Lee, 720 F. Supp. 2d at 321.

**A. Enterprise**

The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one. Here, plaintiffs fail to state a RICO claim because they do not plead any facts which indicate the existence of an enterprise.

The statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Elaborating on this definition, the Supreme Court has stated that a RICO

enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct, which must be proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Weaver v. James, 10 Civ. 6609 (NRB), 2011 WL 4472062 (S.D.N.Y. Sept. 27, 2011) (quoting United States v. Turkette, 452 U.S. 576, 583(1981)).

Plaintiffs allege two enterprises: 1) NBUF, a not-for-profit corporation, and 2) an unincorporated association of defendants whose purpose was to steal money in order to purchase favors and political influence on behalf of NBUF. See Opp. at 15.

Neither NBUF nor the alleged unincorporated association constitutes a RICO enterprise. Although 18 U.S.C. § 1961(4) states an enterprise may include "any individual, partnership, corporation, association, or other legal entity,"18 U.S.C. § 1961(4), that does not mean all not-for-profit corporations are necessarily RICO enterprises. The complaints proceed as though merely identifying one of the listed entities is sufficient to establish a RICO enterprise. That is simply not the case.

With respect to the alleged unincorporated association, the complaints allege no facts that suggest a common purpose among defendants. Plaintiffs merely assume a common goal of stealing money in order to purchase political influence on behalf of NBUF because some defendants share goals such as "serv[ing] the Black African community," Mazal Compl. ¶ 8, and "promot[ing]

9

[City National Bank] as a minority owned and managed bank with a mission to…improve the quality of life within the communities [it] serve[s]." Mazal Compl. ¶ 15.  The fact that Spiegelman transferred some of the escrowed funds to an ICS account does not support the complaints' conclusion that Spiegelman did so because all of the defendants were engaged in a scheme to steal from plaintiffs in order to curry favor on behalf of NBUF.  Spiegelman transferred funds to multiple accounts—many of which do not belong to defendants.

Moreover, even if the court were to assume a common purpose existed, plaintiffs fail to depict the requisite concerted action.  The paragraphs that purport to describe the enterprise are wholly conclusory.  The vast majority of allegations make no mention of the institutional defendants.  Plaintiffs merely claim that the institutional defendants "facilitated" the thefts but provide no detail with regard to their involvement.  For example, the complaints assume a relationship existed between Spiegelman and City National Bank because the bank "violated standards customary in the banking industry, as well as its own internal rules and procedures" when the Penguin account was opened. Penguin Compl. ¶¶ 195-196.  The complaints neither describe the individuals who allegedly acted on behalf of City National Bank nor their connection to NBUF or any of the other defendants.

Given that there can be no RICO violation without an enterprise, plaintiffs' failure to plead a RICO enterprise is sufficient grounds for dismissing

10

their RICO claims. However, the complaints also fail to plead the predicate acts—another key element of a RICO violation—with particularity, which provides another, independent grounds for dismissing the complaints.

## B. Predicate Acts

Plaintiffs allege that "each of the RICO defendants participated in conducting the affairs of NBUF or of the [unincorporated] [a]ssociation or of both through a 'pattern of racketeering activity,' as that term is defined by 18 U.S.C. § 1961(1), which encompassed, at a minimum, multiple acts of mail fraud (18 U.S.C. § 1343), wire fraud (18 U.S.C. § 1344), money laundering (18 U.S.C. §§ 1956, 1957), and interstate transportation of stolen money (18 U.S.C. § 2314), resulting in injuries to the properties and business of plaintiffs." Penguin Compl. ¶ 64.

To establish predicate acts based on mail or wire fraud, plaintiffs must allege "(1) the existence of a scheme to defraud, (2) defendants' knowing participation in such a scheme, and (3) the use of wire or mail communications in interstate commerce in furtherance of that scheme." Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC, 08 Civ. 09101 (PKC), 2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009); see also  MLSMK Inv. Co. v. JP Morgan Chase & Co., 431 F. App'x 17, 19 (2d Cir. 2011) ("A plaintiff alleging a RICO conspiracy based on predicate acts of mail or wire fraud must allege knowledge, in the form of the defendants' <u>knowing</u> participation in a scheme to defraud."). Similarly, knowledge is a key element of both money laundering

11

and interstate transportation of stolen money. See 18 U.S.C. § 1956 (A defendant must "know[] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity"); see also 18 U.S.C. § 2314 ("Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud…").

Here, the complaints merely parrot the statute and do not plead the necessary predicate acts with sufficient particularity. First, the complaints do not make any reference to the use of the mails. Therefore, mail fraud cannot constitute a predicate act.

With respect to wire fraud, money laundering, and interstate transportation of stolen money, plaintiffs fail to plead the knowledge element with any degree of particularity. Plaintiffs do not plead facts showing that any of the defendants other than Spiegelman and possibly Williams knew that the money was stolen. Here, plaintiffs' allegations are circular. For example, plaintiffs allege that City National Bank "knew the funds it was transferring had been stolen" because it had "conspired and collaborated with Williams and Spiegelman in their transfers of stolen money." Opp. at 10. That logic is conclusory and insufficient under Rule 9(b). Although plaintiffs contend that they need not demonstrate knowledge if they plead that defendants' conduct manifested a "reckless disregard" for the facts, plaintiffs plead no facts to

12

suggest that any defendants deliberately shut their eyes to the fact that the money was stolen.

Even giving plaintiffs every benefit of the doubt and inferring that Williams and Spiegelman conspired to steal plaintiffs' escrowed funds, a two-person conversion scheme is not what the civil RICO Act was intended to cover. See Am. Fed., 2013 WL 2391999, at *3 (Congress enacted the RICO Act as part of the Organized Crime Control Act in order to "seek the eradication of organized crime in the United States").

### 3. RICO Conspiracy

Plaintiffs also allege that defendants' actions constitute a RICO conspiracy.

However, to state a conspiracy claim under § 1962(d), plaintiffs must plead the requirements under one of the substantive RICO provisions, such as § 1962(c), and specifically allege the existence of a RICO conspiracy agreement. O & G Carriers, 799 F. Supp. at 1541.

Plaintiffs fail to allege the elements of a § 1962(c) claim with sufficient particularity, and, consequently fail to allege the conduct necessary for a RICO conspiracy under § 1962(d).

### 4. State Law Claims

The complaints assert state law claims against defendants for conversion, fraud, and aiding and abetting a breach of fiduciary duty.  Given that plaintiffs' federal claims are dismissed, the court declines to exercise its

13

supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367. Therefore, plaintiffs' state law claims are also dismissed.

## Conclusion

Plaintiffs' complaints are dismissed pursuant to Rules 12(b)(6) and 9(b). This opinion resolves the motions located at 13 Civ. 0041 Doc. Nos. 15 and 38 and at 13 Civ. 0706 Doc. Nos. 10 and 30.

SO ORDERED.

Dated: New York, New York
      March 11, 2014

_Thomas P. Griesa_

Thomas P. Griesa

United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/11/2014
```